Charles Khoury for Mr. Shockman. May it please the Court, I'm going to try to have three minutes for rebuttal if I can pick at this clock up. All right. The time showing is the total time you have remaining, so just keep that in mind. Thank you. I want the three minutes. This is really outside of AEDPA because of what happened in the Court of Appeal. 2254 D1 and D2 both are applicable here and the best, my helper in this was the dissenting judge. She called the two judges to task for making up facts. Making up facts. All I need is D2 to take us into de novo land. We are in de novo land. The problem is a judge in the minority doesn't carry much sway. Well, you know, I looked, I researched what is the effect of a dissenting judge on precedent. Of course, we know that. It's a dissent. It's a dissent. But on AEDPA, I researched, I wanted to find out, well, where does it say that you don't pay any attention to the dissent in an AEDPA situation? You do. I couldn't find any case. I got Lexis to help me. I called up. I couldn't figure, I had to do a query myself. I had research attorneys. You're researching a negative at that point. Yeah, it's hard. It's difficult. And they told me that. And I said, please try. Frankly, if you're sitting in our shoes, we're going to say, is there anything that the dissent said that make the majority, if you will, unreasonable? Got it. As to what the Supreme Court has said, because they are interpreting the Supreme Court decision, and we're going to be interpreting the Supreme Court decision. And if there is no Supreme Court decision, then they're going to get a lot of deference. Because at that point, if they interpret it as the Supreme Court did, it's done. And if there is no Supreme Court decision, they can even be wrong and be okay. I know. AEDPA's awful. I appreciate that AEDPA is an awful standard for you. It is. But nonetheless. I'm not going to get anywhere saying that. How I get reversed. I know. I know. It's amazing. That's how I get reversed when I say what you just said. It's amazing that people tell you how to decide your case. And that's, it seems to me, I want to see if there's anything in Hamilton about where separation of powers isn't violated. I'm not going to make that argument. But it sure is violated when Congress is telling you how to do your job. Well, it's arguable whether at the time the Constitution was adopted there was habeas corpus relief in federal court of the kind that you're seeking. Forget about, forget about. I shouldn't have cited Hamilton. Perhaps not. It's a great musical anyway. Especially citing Hamilton without anything he said. I'm losing up time. Justice Aron was a magistrate in federal court for a long time before she got elevated. She wrote the dissent before she got elevated to court of appeal. She knows when somebody is playing fast and loose with the facts. Because she had to decide that as a magistrate, a federal magistrate. I had cases when she said, put me down, 2254. Well, here she's on my side. And boy, I'm taking advantage of her. Because she's right on. And where she said, she just said it right in the dissent. She said, let's see, wait a minute, I've got the wrong page here. Oh, here we are. It's entirely contrary to the majority's assertion. I'm on page 28 of my brief. And I've got her whole, I basically put her whole dissent in my brief because it's so good. Better than anything I could ever write. And she wrote, it's remarkable that the majority made this assertion entirely unsupported by the record. Entirely unsupported by the record. Let me go to the issue at bay. It's my understanding that what you're saying is that what happened here was bad. And if counsel had given him the advice about how bad it was, he'd have taken the deal. And I'm going to rule out that argument. That's it. You said my case. All right. Okay. You got it. So that's the deal. So if everyone would have known about this evidence, why is it prejudicial? There would have been no way the prosecution would have given him the same deal. If they had known about those napkins and they had known that they were there, they wouldn't have given him the deal he was given. No one knew that but him. We're not saying anything about what he's got to say to his counsel. We're not going there. Please don't. Well, I'm not going there because I don't want to go there. I'm going at it from the way of prejudice. If everybody had known about those napkins and everybody had known what that was, the prosecutor would have never given him the deal. You have no evidence the prosecutor would have given him a slim deal. In fact, if any prosecutor I know, maybe this one's weak-kneed and wouldn't have, I don't know, but the bottom line, any prosecutor I know is not going to give him a better deal with better evidence. The prosecutor gave him a 32-month deal. They gave him a deal. They didn't know about the prior evidence on the napkins when they offered that deal. They knew he pled guilty to sales. But the evidence that he wrapped the drugs in the cocktail napkins, which was classic M.O. evidence, they didn't know about that. Well, you're saying, you're putting yourself, how do we know what the record says? No, no, no. How do we know the prosecutor would have said that? I'm not putting myself in that. I'm saying you've got the burden of proof. You tell me what have you got that would say the prosecutor would have given him the same deal. I don't have to say shoulda, woulda, coulda. It's your burden. I don't have to do that. It's your burden. You have to show prejudice. Yeah, but you put something on it that I have to speculate. I have to speculate what the prosecutor would have done. Well, if all you can do is speculate, you lose. That's why I asked the question. No, but I think that burden, you made my burden way too higher, way much higher than the law requires. We did not make it. No, they said Rompilla v. Baird is a Supreme Court case. They said, and I've got the other. In the agreement context, in order to show prejudice, what must you show? Well, you have to show that this is the Lafler v. Cooper. Lafler v. Cooper. Justice Kennedy said all these cases are decided by plea, and if the attorney doesn't give good advice, it was a bad situation, and he gets Ed Perlman. It's not an advice case. He did give him good advice. He did give him good advice. He told him to plea to begin with. Yeah, but no, no, no. He said, if I had known this, if I had just gotten the record. No, I thought the record indicated that he suggested the plea, that your client plea to begin with, and that your client, the prosecutor, offered a global plea. The co-defendant accepted. Your client didn't. And then, subsequently, during the course of your client's testimony, they learn about this additional evidence. But what I wanted to ask you is, even if you're right at this stage, why would we, as I understand it, if he had only known about the existence of this, the details of the prior conviction, he would have advised his client to plead guilty, and his client would have pled guilty? Well, this is an unusual case. So why don't we just assume that that's so, for argument's sake? Yes. You're not entitled then, it seems to me, to get the conviction upset altogether. You would be entitled to get, at best, what the sentence was, what the plea offer was to begin with. I mean, this is a strange case. You know, there's an interesting contrast. Your predecessor was arguing about actual innocence, and you're arguing this is a case of actual guilt. He never would have gone to trial. He got 10 years. He got 10 years, Judge. He did it. That's the point. That's bad. This is a bad case. It may be bad, but he said he would have pled guilt. So we're not dealing with the validity of the plea, under your theory. And he's already served a sentence, other than maybe a couple of years of parole. He's already served a sentence. He's an old man. He's a sick old man. Paid a lot of fines. Yeah, but why would we reverse the conviction, under your theory, when you admit that he's guilty, and he would have pled guilty if the attorney had questioned him? Under the same logic of Lafler v. Cooper, where the Supreme Court said it should be reversed. That's my case. Beard, I mean, people do a lot of time before they get to that point, and the point in Lafler v. Cooper wasn't that he was innocent. The number of cases that say in a context like this, we could cure the error by giving him what he would have gotten in effect if counsel, as you say, was ineffective. That clock is scaring me, but I've got to answer. It's relentless. It's relentless, but I haven't been doing all the talking. Well, we know that, but that's part of the equation. All right, fine. I just have to answer Judge Corman's question because there's another case which helps me, which I haven't said yet, and that's recent. It's the Lee v. United States. It just came down in June of 2017, where the Supreme Court, this is the case involving where the defendant, the other way, he pled guilty, and the Supreme Court said if he'd gone to trial he might have beat it and he wouldn't be deported. That's huge because that's really hard to figure out, and they gave that benefit. They said you can withdraw your plea because they granted it, and that's really, when you grant habeas, you're basically doing a withdrawal of the plea or withdrawing the conviction and say, okay, try him again, but don't break the law. That's what you're saying. All right, counsel, you've exceeded your time. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. California Deputy Attorney General Daniel Helton for Appellee. Even assuming the truth of all of Appellant's allegations that he made in his state habeas petition, he's still failed to establish a prima facie case of ineffective assistance of counsel. Under Strickland, he's failed to establish either deficient performance or prejudice, and first moving to deficient performance. Appellant claims that his attorney conducted an inadequate amount of research, but the standard that he's holding his attorney to is one that's greater than this court or the United States Supreme Court has ever held defense attorneys to. If we look at the cases cited in the defense brief, the two cases he primarily relies on are Rompilla v. Beard, the United States Supreme Court case, and Vega v. Ryan. Rompilla was a capital case where the prosecutor indicated he was going to rely on certain evidence, and the court described that evidence as readily available. That's almost the opposite of the situation we have here. No one had the evidence, not the prosecutor or the defense attorney. It certainly was not readily available because it was only located in off-site storage, and of course this is not a capital case. In Vega v. Ryan, the information was actually contained in the case file, and the defense attorney didn't even bother to look through it or talk to either of the attorneys that had previously represented the defendant. Here, it's again completely distinguishable. The information, of course, was not in the case file. And so to hold an attorney to a level of research that's not just knowing about the prior conviction, because if we look at the record, we see, yes, the attorney not only knew about the prior conviction, but he successfully argued in the motions in Lemonade to exclude that evidence from the prosecutor's case-in-chief. Appellant's saying, no, not that his attorney should know about his prior conviction or be able to argue about it, but he needs to know the minute details because if we think about it, in 2002, when the prior occurred, the fact that they were wrapped in a certain type of napkin was a fact that was completely immaterial, and it's only towards the end of trial when the evidence began to come out that that fact became consequential. Additionally, if we look at the declaration... I understand the facts. No one, everyone knew there was a prior conviction. No one knew exactly what the underlying details of the conviction were, and counsel, knowing that there was this prior conviction, went to the court and said, you cannot discuss this prior conviction. That should not be admitted at trial, and the court agreed. Yes, Your Honor. A slight caveat, there were some details that were known, such as that it was a hand-to-hand drug transaction, but... But not the detail about the napkins. Exactly, Your Honor. And no one knew anything about the napkins. Correct. ...until after the defendant had taken the stand, started to tell his story, and then quickly got caught up in a misrepresentation as these additional facts started to come out. Well, the bottom line is that where we got into this evidence, correct me if I'm wrong, is not necessarily in the defendant's testimony in general, but then he tries to lay it all on his co-defendant and say, well, I didn't know anything about this, presents a tape that happened in the back of the car. I didn't know anything about this. Only this guy knew it, so pin him. And at that point, the napkins still wouldn't have come in, but the co-defendant said, hey, it's my turn to route the defense now. Isn't that true? That's exactly correct, Your Honor. And so the co-defendant is the one who was trying to get out from under the gun that his client had aimed then at the defendant, and he's the one who questioned about these details. Yes, Your Honor. Not only was the defendant the person in the best position to know his own signature style of wrapping drugs, but he's the one that caused that evidence to come out because he could have chosen any sort of defense tactic, but he chose one that specifically involved blaming the entire incident on Perry, his co-defendant, and not taking responsibility for himself, which caused Perry to then backlash against him and present the evidence. And additionally, even if... And at that point, given the backlash and given the presentation of evidence, then at that point, then the judge says, well, it seems to me at this point then the conviction ought to be admitted. Yes, Your Honor. That's exactly right. And additionally, even if Pellant could show deficient performance, he can't show prejudice. He hasn't alleged that his attorney could have uncovered the information in sufficient time to take advantage of the plea agreement because to show plea prejudice, he has to show not only that he would have accepted the plea, that the court would have accepted the plea, but that the prosecutor would have made the plea available. And he's never alleged any evidence that the prosecutor would have made the plea deal available, particularly if more damning evidence had come out. As Your Honor pointed out, the more time the prosecutor spends working on the case and the more inculpatory evidence that's brought forward, the less likely the prosecutor is to offer a favorable plea agreement. Which is exactly his burden here, that somehow there was no prejudice. How can he show the prejudice if the prosecutor would never have given him a better plea or even allowed him to have the same plea? That is correct, Your Honor. And for those reasons, when the state court denied the habeas petition, it was doing so because of a lack of a prima facie case of either deficient performance or prejudice. And that's why this case is still covered under AEDPA, because the state court's decision was reasonable given the lack of pleading that appellant did in his case. And so for those reasons, I would ask this court to affirm the district court judgment unless there are any further questions. It appears not. Thank you, counsel. One minute for rebuttal. I reassert it's not under AEDPA because of Taylor v. Maddox. The majority left out totally just said made-up facts and said there's no evidence that Mr. Shockman would have ever accepted the plea. And, of course, he stayed under penalty of perjury. Of course I would have. I just didn't know. He's an old man, deaf. He had hearing aids. Wear microphones and headphones during the trial. Didn't prevent him from being in the business of selling methamphetamines. Fine. That's fine. He was in the car. He was the driver. He was the driver, but the point is you're holding him to a standard of it's because it's his fault because he didn't get the records. It's the attorney. This attorney said it wasn't second-guessing. You've tried cases. And isn't it the defense attorney's job to get the records beforehand? It all depends. The client tells you. Forget about what the client tells you. Both the prosecutor and the defense lawyer knew about this conviction. There was a motion before trial to exclude the conviction. The conviction was excluded. Even after this new evidence came to light, the trial judge still said he wouldn't admit it unless your client did something that would, you know, quote, open the door. And I think we were talking about double deference. There's no doubt that as to the issue of whether counsel was ineffective is subject to double deference. In this case, if it's a D-2, double deference goes out for everything. And the Hurley case is right on point. We know that. When you make up facts, you lose double deference. The majority made up facts. The dissent called them on it. The dissent is reasonable. The majority is not. And there's no law that says you can't consider the reasonability of the dissent. All right. Thank you, counsel. Thank you to both counsels. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman